

DEC 10 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS FERNANDO ALVAREZ | § | |
| | § | |
| PLAINTIFF, | § | CIVIL ACTION NO. |
| | § | |
| verses | § | |
| | § | **18 CV 4646** |
| JUAN CARLOS MARTINEZ, | § | |
| | § | |
| CARLOS ROSAS, | § | |
| | § | |
| KARINA GONZALEZ, | § | |
| | § | |
| ROSAS & SUERKEN, PLLC | § | |
| | § | |
| WILLIAM PATRICK HENDRICK, | § | |
| | § | |
| UBERWURX, LLC, | § | |
| | § | |
| MOBILE COATINGS | § | |
| MANAGEMENT, LLC, | § | |
| | § | |
| COMAR HOLDINGS, LLC, | § | |
| | § | |
| DEFENDANTS. | § | |

## <u>ORIGINAL COMPLAINT</u>

Plaintiff Luis Fernando Alvarez, individually, dba Falaso, Plaintiff Laudelina Arce individually, dba Falaso, and complain of Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant Karina Gonzalez, Defendant Rosas & Suerken, PLLC, Defendant William Patrick Hendrick, Defendant Uberwurx, LLC, Defendant Mobile Coatings Management, LLC, and Comar Holdings, LLC, as follows:

**INTRODUCTION**

1.  Defendants target foreign investors wishing to start a business in the United States. Defendants give the investor a PowerPoint presentation for a company called RhinoPro Mobile. In consideration of $150,000.00, Defendants promise to assist the investor in creating a business entity, assigning that business entity a protected territory and the license for that entity to sell under the RhinoPro Mobile Trademark. As part of the investment, Defendants promise to supply a van with the trademark signage, the equipment, and supplies necessary for that entity to begin operations within 90 days of the investment. From the initial investment, RhinoPro Mobile will hire and train, the entity's employees and pay the employees first two months' salary. RhinoPro Mobile promises the investor a minimum return, in the first year, of $27,900. RhinoPro Mobile also offers a Management and Administrative Services Agreement, to assist the foreign investor in managing the new business during the first couple of years, as the investor has little experience with American business practices.

2.  The investor believes they are starting a new business. The investor is defrauded into purchasing the assets, equipment, and supplies for RhinoPro Mobile to expand its fleet of RhinoPro Mobile vans into a new territory. After RhinoPro Mobile uses the entity it created to steal the investors identify, RhinoPro Mobile uses the Licensing Agreement to obtain the investors business, including its assets, equipment, and supplies. In order for the fraudulent scheme to achieve its goals, Defendants had to enter into a conspiracy to commit multiple, foreseeable, and concerted acts of racketeering, including intentional violations of the Immigration and Nationality Act, violations of the Hobbs Act, Interstate transportation of stolen motor vehicles, interstate transportation of stolen property, money laundering, mail fraud, and wire fraud.

## JURISDICTION AND VENUE

3. This action is brought under the Racketeer Influenced and Corrupt Organizations Statute, the Sherman Act, and the Civil Rights Act. This court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964, 15 U.S.C. §§ 1-7, and 42 U.S.C. § 1985 (2). This court has supplemental jurisdiction, under 28 U.S.C § 1367, for all other claims raised in this action, as they are so related, to the claims in the action within original jurisdiction, that they form part of the same controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391. Defendants are subject to personal jurisdiction in this judicial district, the acts complained of in this action occurred in this judicial district, and the Defendants reside in this judicial district. Additionally, the property subject to this suit is also in this judicial district.

## PARTIES TO THIS COMPLAINT

**PLAINTIFFS**

Luis Fernando Alvarez
18 Degas Park
The Woodlands, Texas 77382
832-705-1400
Falaso1@yahoo.com.mx

**DEFENDANTS**

Carlos Rosas
3100 Timmons, Ste. 380
Houston, Texas 77027
713-337-4529
Crosas1@rscounsel.com

Defendant Carlos Rosas as an individual, in his capacity as attorney to Luis Fernando Alvarez, and in his capacity as general partner of Rosas & Suerken. Carlos Rosas is currently an attorney, licensed to practice law in the State of Texas.

Carlos Rosas can be served at his place of business: Carlos Rosas, Rosas & Suerken, PLLC, 3100 Timmons, Ste. 380, Houston, Texas 77027.

Karina Gonzalez
3100 Timmons, Ste. 380
Houston, Texas 77027
713-337-4529
kgonzalez@rscounsel.com

Defendant Karina Gonzalez, as an individual, and in her capacity as attorney to Luis Fernando Alvarez. Karina Gonzalez is currently an attorney, licensed to practice law in the State of Texas. Karina Gonzalez can be served at her place of business: Karina Gonzalez, Rosas & Suerken, PLLC, 3100 Timmons, Ste. 380, Houston, Texas 77027.

Rosas & Suerken, PLLC
3100 Timmons, Ste. 380
Houston, Texas 77027
713-337-4529

Defendant Rosas & Suerken, PLLC, is a Professional Limited Liability Company in Houston, Texas. Rosas & Suerken, PLLC can be served by serving its partner General Partner Carlos Rosas. Carlos Rosas can be served at his place of business at Carlos Rosas, Rosas & Suerken, PLLC, 3100 Timmons, Ste. 380, Houston, Texas 77027.

Juan Carlos Martinez
1311 Price Plaza Drive
Katy, Texas 77449
855-417-4466
jcmartinez@rhinoprocs.com

Defendant Juan Carlos Martinez, is being sued in his individual capacity, and in his capacity as the owner, partner, and manager of Uberwurx, LLC, in his capacity as owner, partner, and manager of Mobile Coatings Management, LLC, in his capacity as owner, partner, and manager of Comar Holdings, LLC, in his capacity as supervisor and beneficiary of employee/agent Leslie Mitchell, in his capacity as supervisor and beneficiary of employee/agent Bill Hendrick, in his capacity as supervisor and beneficiary of employee/agent Jorge Hakim, and in his capacity as owner of the property, subject to this suit, located at 1311 Price Plaza Drive, Katy, Texas 77449. Juan Carlos Martinez is represented by Magenheim & Associates. Juan Carlos Martinez can be served by serving Juan Carlos Martinez, care of his attorney, Alan Magenheim at 3701 Kirby Drive, Suite 913, Houston, Texas 77098.

Uberwurx, LLC
1311 Price Plaza Drive
Katy, Texas 77449

855-417-4466
jcmartinez@rhinoprocs.com

Defendant Uberwurx, LLC, herein "Uberwurx," is represented by Magenheim &
Associates. Uberwurx, LLC, can be served by serving its president Juan Carlos
Martinez, care of his attorney, Alan Magenheim at 3701 Kirby Drive, Suite 913,
Houston, Texas 77098.

Mobile Coatings Management, LLC
1311 Price Plaza Drive
Katy, Texas 77449
855-417-4466
jcmartinez@rhinoprocs.com

Defendant Mobile Coatings Management, LLC, herein "MCM," is represented by
Magenheim & Associates. Mobile Coatings Management, LLC, can be served by
serving its president Juan Carlos Martinez, care of his attorney, Alan Magenheim
at 3701 Kirby Drive, Suite 913, Houston, Texas 77098.

Comar Holdings, LLC
1311 Price Plaza Drive
Katy, Texas 77449
855-417-4466
jcmartinez@rhinoprocs.com

Defendant Comar Holdings, LLC, herein "Comar," is represented by Magenheim
& Associates. Comar Holdings, LLC, can be served by serving its president Juan
Carlos Martinez, care of his attorney, Alan Magenheim at 3701 Kirby Drive, Suite
913, Houston, Texas 77098.

William Patrick Hendricks
Address Unknown

Defendant William Patrick Hendricks is an individual. Hendricks can be served at
his home, address is currently unknown.

Leslie Mitchell
Address Unknown

Defendant Leslie Mitchell is an individual. Mitchell can be served at her home,
address is currently unknown.

## BACKGROUND

5.  Juan Carlos Martinez is president of Uberwurx, LLC, dba RhinoPro, RhinoPro Mobile, and RhinoPro CS, herein "Uberwurx." Uberwurx is product distributor for the Rhino Linings Corporation. The Rhino Linings Corporation produces sprayable polyurethane coating for application on a wide range of commercial, industrial, and consumer products, including truck beds. Uberwurx purchases the chemicals wholesale from South America, then repackages the polyurethane product into disposable cartridges. Uberwurx sells the spray-on bed liner cartridges to applicators throughout the United States to dealerships, body shops, and individuals that spray the material onto truck beds.

6.  Uberwurx also has a fleet of mobile units, applicators in commercial vans that perform spray-on bed liners at the customers location, a service provided exclusively by RhinoPro Mobile (Uberwurx). A bed liner is a thin coat of polyurethane that protects a truck bed from corrosion and impact damage. Before RhinoPro Mobile, to enter the bed liner industry, an investor had to purchase or lease a traditional building to control the environment before, during, and after the spray-on process. The investor had to invest in specialized equipment and had to hire and train people that knew the business in order to perform the spray-on bed liners for a profit. RhinoPro Mobile revolutionized the process by customizing a commercial van (the mobile unit) with a portable generator and a portable air compressor. The generator and air compressor power a RhinoPro Cartridge System, a dual component pneumatic spray gun, designed for applying the protective coatings onto the truck beds. The RhinoPro Mobile applicator uses an inflatable workstation to protect the truck before, during, and after the process. The spray gun, inflatable workstation, and mobile unit allow the applicator to apply the fast set materials on-site without the cost and liability exposure of transporting vehicles to and from a traditional building.

7.  According to Uberwurx's promotional material, Uberwurx began a licensing program in 2012. Under the Licensing program, Uberwurx grants the licensee the rights to exclusively sell in one of Uberwurx's protected territory under the RhinoPro Mobile trademark. Uberwurx also provides the licensee with a mobile unit, a customized van with the RhinoPro Mobile trademark signage, equipment, disposable cartridges containing the material to perform the spray-on services (the inventory), and other supplies needed to begin operations. Under the licensing agreement, Uberwurx also provides a training program for the licensee, including the operational manuals, necessary to use the Uberwurx proprietary system. Uberwurx also hires and trains two employees for the licensee's new business to

ensure the investor can begin operations within 90 days of entering the program. Uberwurx sells the inventory the licensees will need to perform the spray-on bed liners in their territory, and Uberwurx provides the sales and logistical support, by phone, from its home office in Katy, Texas to the states the applicator is working in. Uberwurx has vans operating in Missouri, Florida, Minnesota, Tennessee, and Georgia. Uberwurx began selling the Licensing Agreements to foreign investors wishing to establish an enterprise in the United States.

8. Foreign investors from treaty countries may apply for an investor's visa if they make a substantial investment in a bona fide enterprise in the United States. The investment must be substantial in relationship to the total cost of either purchasing an established enterprise or establishing a new one. The investment must be irrevocably committed to the enterprise. A bona fide enterprise refers to a real, active and operating commercial or entrepreneurial undertakings which produces services or goods for profit. The investment may not be marginal. A marginal enterprise is one that does not have the present or future capacity to generate more than enough income to provide a minimal living for the treaty investor and his or her family.

## FACTS COMMON TO ALL CLAIMS

9. On April 11, 2015, Luis Fernando Alverez met Juan Carlos Martinez at a function in the Woodlands, Texas. Martinez gave Alvarez a PowerPoint presentation for a company named RhinoPro and its licensing program.[1] Martinez had to translate the slides for Alvarez because Alvarez doesn't speak, read, or write in English. Alverez was excited about investing in the RhinoPro Mobile business but couldn't sign the contracts because Alverez couldn't read the contracts.

10. The contracts are more than 30 pages of legalese and in English. Martinez told Alvarez that the available territories were going fast. Martinez suggested Alverez sign the contracts without reading them, as a sign of good faith, with both parties promising not to execute the contracts until Alverez could meet with an attorney to explain the contracts to Alverez in Spanish. After Alvarez consulted with an attorney, Martinez said the parties could sign the contracts again, but in duplicate, binding the parties to the terms of the contracts.

11. On or about May 16, 2015, Alverez signed two contracts, without reading them. On or about May 24, 2015, Martinez sent two emails to Alverez, one containing the

---

[1] A true and correct copy of the presentation is attached as Exhibit A.

"Licensing Agreement," with Uberwurx and one containing the "Management and Administrative Services Agreement," with Uberwurx affiliate, Mobile Coatings Management, LLC, herein, "MCM."

12. On April 28, 2015, before Plaintiff signed the contracts, Alvarez entered into a contract with Attorney Carlos Rosas, an immigration and investments attorney, to assist Plaintiff in navigating the E-2 visa process. Alvarez told Rosas that Alvarez was investing in RhinoPro Mobile. Rosas told Plaintiff that Juan Carlos Martinez was an excellent resource concerning E-2 visas.

**THE FIRST MISREPRESENTATION**

13. As part of a fraudulent scheme, before entering into the contracts, Defendant Martinez and Defendant Rosas told Plaintiff that Plaintiff needed to create a Limited Liability Company to manage the investment. Plaintiff relied on the representation because Carlos Rosas is Plaintiff's attorney and an immigration expert. The representation, however, is not true and known to be untrue to Defendants when they made the representation. Defendants made the representation, so Plaintiff would rely on it. Because of Plaintiff's reasonable reliance, Plaintiff created the LLC. Plaintiff did not create the LLC to receive the protections an LLC provides. Plaintiff created the LLC because Plaintiff was told by his attorney that it was necessary to create the RhinoPro Mobile business.

**THE SECOND MISREPRESENTATION**

14. As part of a fraudulent scheme, before entering into the contracts, William Hendricks, Juan Carlos Martinez, and Carlos Rosas told Plaintiff that Plaintiff needed to add, Leslie Mitchell, Uberwurx's Chief Operating Officer, to the Plaintiff's LLC charter. Defendants said it was necessary in order for MCM and to properly manage the Plaintiff's investment. Plaintiff relied on the representation because Carlos Rosas is Plaintiff's attorney and an expert in investments. The Plaintiff reasonably relied on the representation and added Leslie Mitchell to the charter. The representation, however, is untrue and known to be untrue to Defendants at the time they made the misrepresentation. Defendant made the misrepresentation with the intent that Plaintiff would rely on the misrepresentation and add Leslie Mitchell to the LLC's charter.

**THE PROMISSORY FRAUD**

15. As part of a fraudulent scheme, before entering the contracts, Juan Carlos Martinez convinced Plaintiff that the $150,000 "Licensing Fee" was to establish a new territory for Plaintiff's business, to provide a year of regional sales support to Plaintiff's business, to purchase the van for Plaintiff's business, to customize the

van for Plaintiff's business, to purchase the equipment, supplies, and inventory for Plaintiff's business, and to hire and train the new LLC employees in order for them to begin the Uberwurx Licensed operation i.e. to begin Plaintiff's business operations. Juan Carlos Martinez also convinced the Plaintiff that the personal and financial information MCM was requesting was necessary to manage the Plaintiff's investment, at least until Plaintiff familiarized himself with American business practices.

**THE FRAUDULENT SCHEME I**

16. On or about April 11, 2015, Defendant Juan Carlos Martinez wanted to purchase a new mobile unit for Uberwurx and expand Uberwurx's territory. Uberwurx cannot compete with traditional bed liner applicators, those that work at body shops and dealerships. A traditional bed liner from a certified RhinoPro® applicator costs about $645.00. Uberwurx offers the same service for $300.00, sometimes for $150.00. Uberwurx can only offer the services at this price if someone else picks up the tab for the tangible and intangible assets required to expand into a new territory, if someone else picks up the tab for the cost of goods and expenses required to expand into a new territory, if someone else picks up the tab for the market research required to expand into a new territory, if someone else picks up the tab for the hiring and training of the employees and territory manager that will run the operation in the new territory, and if someone picks up the tab for regional sales support and logistics required to expand and control the interstate operations in a new territory. Plaintiff was that someone else.

17. Defendants made the Plaintiff believe Plaintiff was going into business for himself, but Plaintiff was actually unwittingly investing in Martinez, Rosas, Gonzales, Hendricks, and Mitchell's enterprise. Juan Carlos Martinez required the Plaintiff to create an LLC because Martinez needed a way to purchase and transport a van across state lines without the owner's consent or knowledge. Leslie Mitchell was added to the charter to ensure Mitchell, at Martinez's instruction, could purchase and sell assets on behalf of the LLC. Leslie Mitchell could also conduct, using the private financial information obtained through the MCM contract, common business transactions like purchasing insurance and applying for permits, registering assumed names, etc. as necessary to conduct business in another state. As an officer, Leslie Mitchell could enter the LLC into contracts that Plaintiff didn't know about or agree to. Mitchell could bind the LLC to the terms of the contracts. The contracts play a penultimate role in the overall fraudulent scheme.

**COUNT I: VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION § 1962 (c)**

18. The allegations of paragraphs 1 through 17 are incorporated herein by reference.

19. This count is against Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant Karina Gonzalez, Defendant Leslie Mitchell, and Defendant William Patrick Hendricks (the "Count I Defendants").

20. Uberwurx, LLC, is an enterprise engaged in and whose activities affect interstate commerce, specifically the enterprise sells goods and services, including Rhino Linings products, and spray-on bed liner services in Texas, Missouri, Florida, and Minnesota. The

21. Juan Carlos Martinez is the president of Uberwurx, LLC. William Patrick Hendricks is the Chief Financial Officer. Both are employed by Uberwurx, LLC. Carlos Rosas, Karina Gonzalez, and Rosas & Suerken, PLLC, are associated with Uberwurx, LLC. Each of the Count I Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed the following racketeering activity.

22. On June 9, 2015, as part of a fraudulent scheme, Attorney Carlos Rosas sent an email, from Houston, Texas, to Plaintiff, in Mexico, informing Plaintiff that a business plan was required in order to apply for the E-2 visa[2]. Juan Carlos Martinez, on behalf of Uberwurx informed the Plaintiff that Uberwurx, as part of the Licensing Agreement, would write the business plan for Plaintiff using the market research it had conducted for Plaintiff's business. Plaintiff relied on Carlos Rosas representation because Rosas is Plaintiff's attorney and an expert in immigration law. Plaintiff relied on Martinez's representation because Martinez claimed to know a lot about the E-2 process. The representations were untrue and known to be untrue to Carlos Rosas when Rosas made the statement to Plaintiff

---

[2] In violation of Title 18 U.S.C. § 1343, Title 18 U.S.C. §1951. The conduct is also indictable under the Immigration and Nationality Act, section 274.

and to Juan Carlos Martinez when Martinez made the representations to Plaintiff. Rosas made the statement to Plaintiff so that Plaintiff would rely on the representation and act on it, specifically in order to ensure Plaintiff would allow Uberwurx to write the business plan Plaintiff would then include in Plaintiff's E-2 visa application.

23. On June 10, 2015, William Hendricks was the Chief Operating Officer for Uberwurx. The Count I Defendants, including Hendricks, knew the business plan, described in paragraph _ was going to be submitted to Department of Homeland Security, U.S. Citizenship and Immigration Services, in connection with an application for benefits under the Immigration and Nationality Act.

Under the Immigration and Nationality Act, Section 274C. [8 U.S.C. 1324c] (a) Activities Prohibited. – It is unlawful for any person or entity knowingly-

(1) To forge, counterfeit, alter, or falsely make any document for the purpose of satisfying a requirement of this Act or to obtain a benefit under this Act,

(2) To use, attempt to use, possess, obtain, accept, or receive or provide any forged, counterfeit, altered, or falsely made document in order to satisfy any required of this Act or obtain a benefit under this Act,

(1) To prepare, file, or assist another in preparing or filing, any application for benefits under this Act, or any document required under this Act, or any document submitted in connection with such an application or document, with knowledge or in reckless disregard of the fact that such an application or document was falsely made.

24. On June 10, 2015, as part of a fraudulent scheme, Defendant Hendricks knowingly wrote misrepresentations in Plaintiff's five-year business plan, including the following:

> Falaso (Plaintiff's LLC) anticipates revenue growth from its initial $292,500 in the first year to $810,000 in its fifth year based on the following table.

| Projected 5 Year Total Annual Revenues | | | | | |
|---|---|---|---|---|---|
| Product | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
| Bedliner Application Service | $292,500.00 | $506,250.00 | $731,250.00 | $798,750.00 | $810,000.00 |
| Annual Revenue Growth Rate | | 42.22% | 30.77% | 8.45% | 1.39% |

25. On June 10, 2015, William Hendricks knew Plaintiff's LLC was never going to generate a single dime of revenue, as Plaintiff's business was part of a fraudulent scheme known to the Count I Defendants, including Hendricks. William Hendricks intentionally wrote the statement with knowledge or in reckless disregard of the fact that the document including the statement was falsely made, in violation of the Immigration and Nationality Act. The Count I Defendants knew the document contained representations that were falsely made, and that they had assisted another in preparing documents, including the business plan, in connection with an application for benefits under the Act, in violation of the Immigration and Nationality Act.

26. It has been more than three years and Plaintiff's business has not generated a single cent of <u>revenue,</u> let alone profit.

27. The Count I Defendants, including William Hendricks knew Plaintiff's LLC was never going to have employees, as Plaintiff's business was part of a fraudulent scheme known to the Count I Defendants, including Hendricks. On June 10, 2015, as part of a fraudulent scheme, Hendricks wrote in the business plan:

> FALASO (Plaintiff's LLC) will be supporting two full time jobs, excluding the investor, for the first year and grow to five full time jobs, excluding the investor, over the four-year period. FALASO will also be involved in a shared employee program with its licensor to assist it with its route establishment, daily operations, and on-going market expansion.

**FRAUDULENT SCHEME II**

28. On or about June 8, 2015, Defendant Juan Carlos Martinez decided that the business opportunity the Count I Defendants had induced Plaintiff into, was worth more than the one-hundred and fifty thousand dollars ($150,000.00) the Defendants had obtained from the Plaintiff. Martinez wanted an additional fifteen thousand dollars ($15,000.00). The Count I Defendants conspired to intentionally make misrepresentations in the business plan to force the Plaintiff into paying the Count I Defendants an additional fifteen thousand dollars ($15,000.00).

29. On June 10, 2015, Defendant William Hendricks was in possession of or had access to the licensing agreement between Uberwurx and Plaintiff. Hendricks had to use the Licensing Agreement in order to write the business plan. The Licensing Agreement outlines the creation of a new RhinoPro Mobile company with a one-hundred and fifty thousand-dollar (**$150,000.00**) initial investment by the Plaintiff.

30. On June 10, 2015, Defendant Hendricks prepared the business plan with knowledge or in reckless disregard of the fact the business plan contained false, fictitious, or fraudulent statements. Specifically, Hendricks wrote:

> This business plan outlines the creation of a new company with a **$165,000 dollar** initial investment. The company will be supporting two (2) full time jobs for the first 2 years and create five (5) full time jobs between its late second and fifth year, excluding the positions of the investor. Due to the shared services agreement with RhinoPro, additional positions are created and maintained.

31. On June 10, 2015, Defendant Hendricks had no documents that described a one hundred and sixty-five thousand-dollar investment by the Plaintiff. Hendricks intentionally wrote the misrepresentation in violation of the Immigration and Nationality Act, and in violation of the Hobbs Act, prohibiting conspiracy to commit extortion, and Title 18. U.S.C. § 1344, prohibiting conspiracy to commit bank fraud, as described below. For the same purpose, Hendricks wrote in the business plan:

- Falaso (Plaintiff's LLC) expects to invest in Current Assets $15,000 for available cash in Checking/Savings and $16,000 for inventories.
- Start Up Costs requirements include sufficient working capital ($31,000) to help meet the operating costs for the first twelve months of operations. This includes available cash in Checking/Savings and inventories.
- The total Start Up Costs are estimated to be $165,000.00.
- Falaso will finance 100% of the investment.

32. On June 12, 2015, Plaintiff met with Attorney Carlos Rosas and Defendant Martinez. Rosas explained the business plan in Spanish to the Plaintiff, omitting the misrepresentations made by Hendricks, including the misrepresentations described in paragraph _. Plaintiff was unaware of the misrepresentation when Plaintiff submitted the business plan as part of Plaintiff's E-2 visa application on June 15, 2015.

33. One month after Plaintiff submitted his E-2 visa application, Juan Carlos Martinez contacted Plaintiff by phone and told Plaintiff to deposit fifteen thousand dollars into an operating account to comply with the amounts in the business plan. Plaintiff didn't know what Defendant Martinez was talking about. Martinez informed Plaintiff that the amount was described in Plaintiff's business plan submitted to the USCIS. Plaintiff didn't want to provide an additional fifteen thousand dollars.

34. On August 13, 2015, as part of the same scheme, Defendant Hendricks emailed Juan Carlos Martinez, writing:

> Juan Carlos,
> Note, the business plan lists $15,000 in Working Capital. Pato has clearly read the plan as he referenced it during our discussions!!!!!!

35. Hendricks sent the email, as part of a fraudulent scheme, to later claim there was independent evidence that Plaintiff had read the business plan. No rational person would ever write such an email except for the purpose of creating a paper trail, something the Count I Defendants did a lot.

36. On September 4, 2015, as part of the scheme, Defendant Hendricks wrote:

> Dear Pato (Plaintiff),
>
> I understand from Juan Carlos that you discussed the working capital requirements late last week and the fact we need to have Leslie Mitchell added as a signatory on the Falaso account. Would you kindly update us on the status of adding Leslie and funding the working capital? We are unable to move forward with hiring personnel for your van and moving the van into production until such funds are available and Leslie has the ability to access the account to make payroll and other required business payments. I have asked Jorge to translate the above into Spanish for your ease of reference. Feel free to respond in Spanish and Jorge will translate again.
>
> Sincerely,
> Bill Hedrick

37. Plaintiff with his consent having been induced by the wrongful use of actual and threatened fear of economic harm, deposited $5,000.00 into a bank account. Defendant Martinez told Plaintiff that Plaintiff needed to come up with the difference ASAP. Defendant Martinez also told Plaintiff to add Leslie Mitchell to the bank account.

38. At all times material to this action, Plaintiff was engaged in the business of providing spray-on bed liners in the State of Missouri, by way of Texas, and an industry that affects interstate and foreign commerce. That on or about August 13,

2015 through November 23, 2015, Defendant William Hendricks, Defendant Juan Carlos Martinez, Defendant Carlos Rosas, Defendant Karina Gonzalez, and Defendant Leslie Mitchell did unlawfully obstruct, delay and affect the movement of articles and commodities in such commerce by extortion, as that term is defined in Title 18, United States Code, Section 1951, in that Defendants attempted to obtain $15,000.00, and Juan Carlos Martinez did obtain $5,000.00 in cash, the property of Plaintiff with his consent having been induced by the wrongful use of actual and threatened fear of economic harm.

39. Having forced the Plaintiff to deposit five thousand dollars into a banking account, the Count I Defendants continued to threaten Plaintiff into surrendering another ten thousand dollars. On November 20, 2015, as part of a scheme to extort Plaintiff, Defendant Leslie Mitchell and Defendant Juan Carlos Martinez sent an email from Katy, Texas, to Plaintiff, in Mexico. Defendant Leslie Mitchell wrote:

> For Falaso (Plaintiff's LLC), we need the following documents: We have asked Karina multiple times and she either doesn't respond or tells us she will get permission and then does not follow through.
>
> 1) Original FEIN confirmation letter from the IRS. We have the number on the application but need the original letter from the IRS for filings...
> 2) Executed Company Agreement
> 3) Executed Corp. Resolution for addition of officer
> 4) Articles of Incorporation
> 5) Laudelina Arce: SS number for tax permit applications + prepaid card
> 6) Access to online bank account management
> 7) CPA contact information
> 8) If the bank account balance is not 15K we are unable to proceed. Thank you very much.

40. The Count I Defendants wrote the email described in Paragraph 39 in violation of Title 18 U.S.C. § 1343, prohibiting use of electronic communication in furtherance of a scheme to defraud, Title 18 U.S.C. § 1951, prohibiting conspiracy to commit extortion, and Title 18 U.S.C. § 1344 prohibiting conspiracy to commit bank fraud.

41. On May 6, 2016, Plaintiff told Defendant Carlos Martinez that Plaintiff wanted out of the Licensing Agreement. In response, as part of a fraudulent scheme, as described below, Juan Carlos Martinez wrote an email from Katy, Texas, to Plaintiff in Mexico, writing:

> In an attached file you will receive the letter of cancelation of the rent agreement with RhinoPro CS and the letter of cancelation of the administration and handling contract of services of MCM, LLC. Enclosed with this you will receive an account statement for administration and handling expenses by MCM, LLC to Falaso LLC for the sum of $40,000.00 USD; I hope this invoice will be paid by not later than 30 days. The licensing agreement between Falaso, LLC, and Uberwurx, LLC continues in force since it is, and it was the keystone for obtaining your visas. I recommend that you start to work your license as soon as possible and that you obtain sound advice because the basis for obtaining your visas are **irrevocable investment, risk capital, generation of employment, and suitable operating capital** (which incidentally you never had in the Falaso account). In accordance with the business plan that was presented in your folder to the American consulate $15,000 USD are needed; the maximum amount which was in the Falaso account was $5,000 USD. I am enclosing the page of your business plan which reflects all the above.
>
> Yours faithfully,
>
> Juan Carlos Martinez
> President

42. The parts in bold, are in bold in the original email. Defendant Martinez wrote the email in violation of Title 18 U.S.C. § 1343, prohibiting the use of electronic communication in furtherance of a scheme to defraud, and Title 18 U.S.C. § 1951, prohibiting conspiracy to commit extortion. Defendant Martinez is extorting Plaintiff not Plaintiff's LLC. Additionally, each act Martinez is claiming the Plaintiff will now be responsible for, are the acts Martinez committed when he failed to honor the contracts, something Martinez planned since before Plaintiff signed the contracts.

43. The acts described herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961 (5). As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in their business and property.

## COUNT II: VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION § 1962 (a)

44. The allegations of paragraphs 1 through 43 are incorporated herein by reference.

45. This count is against Defendant Juan Carlos Martinez and Defendant Uberwurx, LLC. Uberwurx, LLC, is an enterprise engaged in and whose activities affect interstate commerce, specifically the enterprise sells goods and services in Texas, Missouri, Florida, and Minnesota. Falaso is an enterprise that sells spray-one bed liners in Missouri.

46. As of October 4, 2015, Defendant Uberwurx had the keys to Plaintiffs commercial van, equipment, and inventory. Defendant Uberwurx had explicit instruction to give the keys to the Plaintiff's employees, after Defendant Uberwurx hired and trained the employees. The employees were then to use Plaintiff's assets to generate income for Plaintiff in Kansas City, Missouri. Defendant Uberwurx did not have permission to use the van for any other purpose.

47. Defendant Uberwurx, at the instruction of Defendant Juan Carlos Martinez, stole Plaintiff's assets including the van, equipment, and fourteen thousand dollars in inventory. Defendant Uberwurx and Defendant Juan Carlos Martinez transported, or caused to be transported, the stolen van and the stolen inventory across state lines, from Texas to Missouri, in violation of Title 18 U.S.C. § 2312, prohibiting interstate transportation of stolen vehicles and Title 18 U.S.C. § 2314, prohibiting interstate transportation of stolen property. The racketeering activity caused Plaintiff more than $16,000.00 in damages, including physical damages to Plaintiff's van after Defendant Uberwurx's employees had an auto accident while in possession of Plaintiff's van. Defendant Uberwurx refuses to disclose the names of the drivers, the cause and location of the accident, if there were any injuries, and if the accident was reported to the police.

48. As a result of Defendant Uberwurx and Defendant Juan Carlos Martinez's racketeering activity, Defendant Uberwurx received more than fourteen thousand dollars in income. Defendant Uberwurx then directly or indirectly reinvested that additional income into Defendant Uberwurx to operate Defendant Uberwurx's enterprise in Missouri and other States.  The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

## 1962 (a) INVESTMENT INJURY

49. Plaintiff is the exclusive seller of Mobile Spray-on Bed Liners in Missouri. Each sell Defendant made in Plaintiff's territory is a sell that the Plaintiff would have made. Plaintiff and Defendant sell the same services, use the same marketing, use the same inventory, and operate under the same trademark. Even the vans the two businesses use are identical. Plaintiff did not make any sells in 2015 or 2016, losing more than $27,900.00 in profits. The lost income was foreseeable to Defendant Uberwurx and Defendant Juan Carlos Martinez. Every dollar Defendants earned in Plaintiff's territory is a dollar lost by the Plaintiff. The exact amount the Plaintiff lost in 2015 and 2016 can be established using Defendant Uberwurx's accounting system, as Uberwurx has no right to sell the services in Missouri, according to the

Licensing Agreement. The amount of damages Plaintiff suffered in lost earnings in 2015 and 2016 can be traced directly to Uberwurx and Martinez's violation of section 1962 (a).

50. Plaintiff suffered a special injury apart from the LLC. In that under-Plaintiff's E-2 Visa, Plaintiff must generate income sufficient to support the Plaintiff and Plaintiff's family. Because of Defendants violation of 1962 (a), Plaintiff was unable to make the amount of income required under the E-2 visa guidelines. As direct and proximate result of the Count II Defendant(s)' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiff have been injured in their business and property.

## COUNT III: FRAUD IN THE INDUCEMENT

51. On January 18, 2016, as part of a fraudulent scheme, Defendant Juan Carlos Martinez, acting in his individual capacity, entered into a verbal contract with Plaintiff Luis Fernando Alvarez. According to the contract, Defendant Juan Carlos Martinez promised to pay Alvarez $187,000.00 for Plaintiff's licensing agreement, including the RhinoPro Mobile van, the Kansas City, Missouri Territory, and the rights to use the trademark, Rhino Pro Mobile in Plaintiff's Missouri territory. Defendant Juan Carlos Martinez memorialized the verbal contract in an email to Plaintiff on May 6, 2018. Martinez also made a partial payment of twenty-five thousand dollars towards the contract. Martinez wrote the purpose of the payment in an email as well.

52. Defendant Juan Carlos Martinez entered the contract with no intention to perform, but rather as part of a fraudulent scheme, to induce Plaintiff into a fraudulent scheme. Martinez wanted Plaintiff to invest one-million dollars into Uberwurx but had run out of carrots and excuses to demonstrate to the Plaintiff that Juan Carlos Martinez wasn't a just a fraud. Defendant Juan Carlos Martinez wrote:

You also made reference that we are men of our word and that our word is meant to be kept and I am in total agreement with you. On January 18, 2016, we agreed that I would buy the van and your Rhino Pro License. You provided me the title to resell the van since I had a client who was buying 10 licenses the first days of March for the NASCAR race and I offered you $25,000.00 for the utility of your license... But to be a man of your word and fulfill the agreement, you want to be paid $25,000.00... I agree, and we can close this negotiation. In the same way and as men of our word, you would invest $1,000,000.00 dollars to buy 10 vans so that we could resell them with a year for a profit of $25,000.00.

53. Plaintiff through his attorney, sent a letter to Defendant Juan Carlos Martinez requesting Martinez rescind the Licensing Agreement and return Plaintiff's $155,000 investment for failure to perform under the contracts.

54. On July 8, 2016, as part of a fraudulent scheme, Juan Carlos Martinez fabricated invoices for Plaintiff, purporting to show a debt Plaintiff had to MCM and a debt to Uberwurx. Martinez then caused the fabricated invoices and fabricated billing statement to be mailed to Plaintiff, by certified mail, demanding $58,000 from Plaintiff that Defendant Martinez knows Plaintiff doesn't owe.  The invoice numbers on the statement Juan Carlos Martinez fabricated: 1187, 1188, 1189, 1190, 1191, 1192, 1193, 1194, 1195, 1196, do not match the invoice numbers in the individual invoices that Juan Carlos Martinez fabricated: 1187, 1255, 1278, 1298, 1315, 1365, 1396, 1425, 1535. Martinez violated Title 18 U.S.C. § 1341, prohibiting the use of the mail in furtherance of a fraudulent scheme, as described below.

55. Additionally, on the same date, Juan Carlos Martinez created an invoice, with invoice number 1187. According to Martinez the invoice had been created on August 1, 2015 and mailed to Plaintiff on August 1, 2015. Except the contract that Juan Carlos Martinez was using to create the invoice didn't begin until August 15, 2015. Martinez fabricated an invoice for services MCM didn't render, 15 days

before the contract was set to begin. MCM never provided any services for Plaintiff, other than fabricating invoices and defrauding Plaintiff.

56. As a result of relying on Defendant Martinez's promise of future performance, Plaintiff Alvarez suffered damages when Defendant Martinez failed to perform as promised.

## COUNT III: VIOLATION OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATION § 1962 (b)

57. The allegations of paragraphs 1 through 56 are incorporated herein by reference.

58. This count is against Defendant Juan Carlos Martinez (the Count III Defendant)

59. Plaintiff is an enterprise engaged in, and whose activities, affect interstate commerce.

60. On October 27, 2017, Defendant Juan Carlos Martinez, as part of a fraudulent scheme, testified under oath, that:

> Falaso (Plaintiff) received three payments of profit in connection with the business in early 2016, in the amounts of $8,750, $5,000, and $20,000.00. Thereafter, in June of 2016, Falaso through its attorney, sent correspondence to Uberwurx rescinding the agreements of Falaso with Uberwurx, and MCM. Falaso has never made a single payment for management fees, administrative fees or rent.

61. The eight thousand seven hundred and fifty dollars ($8,750.00) that Martinez is testifying about was not a payment of profit in connection with Plaintiff's business. Martinez issued the payment to Plaintiff to reimburse Plaintiff for a magazine ad. Uberwurx's accounting system and Uberwurx 2016 income tax return demonstrates the same.

62. The twenty-five thousand dollars ($20,000.00 + $5,000.00) that Martinez is testifying about was not a payment of profit in connection with Plaintiff's business. Martinez issued the payment to Plaintiff in connection with the verbal contract as described above and as described in Martinez's email to Plaintiff on May 6, 2016. Uberwurx's accounting system and Uberwurx's 2016 income tax return demonstrates the same.

63. On October 9, 2017, immediately before Martinez testified under oath, MCM produced a Profit and Loss Report during discovery demonstrating Martinez was lying:

| | Falaso, LLC | |
|---|---|---|
| 10/09/17 | Profit and Loss Standard | |
| | All Transactions | |
| | | Jan 15, '16 |
| | Ordinary Income/Expense | |
| | Expense | |
| | Bank Service Charges | 175.00 |
| | Marketing Research and Devel... | 31,000.00 |
| | Office Supplies | 42.10 |
| | Total Expense | 31,217.10 |
| | Net Ordinary Income | -31,217.10 |
| | Net Income | -31,217.10 |

64. If Plaintiff had earned income in connection with his business, the income would have appeared in the Plaintiff's Profit and Loss Report. But the Profit and Loss Report shows no income earned in the year 2015 or 2016.

**FRAUDULENT SCHEME III**

65. On July 8, 2016, Defendant Juan Carlos Martinez intentionally violated Title 18 U.S.C. § 1341, as described above, and lied under oath on October 27, 2017, in order

to maintain control over Plaintiff's enterprise. If Plaintiff's Licensing Agreement was procured through fraud, Plaintiff can escape the Licensing Agreement and recover damages for the fraud. More importantly, Plaintiff could leave the Licensing Agreement without violating the terms of the E-2 visa. If instead, Plaintiff received some profit in connection with Plaintiff's investment and Plaintiff chose to leave the Licensing Agreement, then it would appear as if Plaintiff was leaving the investment because the profit wasn't as large as Plaintiff wanted. Martinez was creating a situation that would prevent the Plaintiff from escaping the fraudulent licensing agreement.

66. On or about October 9, 2017, Defendant Uberwurx produced invoices that were meant to support Juan Carlos Martinez's frivolous positions. The invoices instead demonstrate that Uberwurx had performed the services Uberwurx Licensed Plaintiff to perform, in Plaintiff's "protected" territory. It allowed for Plaintiff to understand how Uberwurx launders the income it receives through the licensee's businesses, concealing the income from the licensees and the IRS and in violation of Uberwurx's obligations under each the licensing agreements it enters into with foreign investors.

**FRAUDULENT SCHEME IV (THE MONEY LAUNDERING)**

67. Under the Licensing Agreements, Licensees are required to use the tradename "RhinoPro Mobile." Uberwurx, however, also uses the tradename RhinoPro Mobile. After Uberwurx secures the foreign investors' money, it creates a shell entity for the foreign investor- the LLC. Uberwurx uses the LLC to purchase a vehicle in the LLC's name. Uberwurx also registers the tradename RhinoPro Mobile in the territory the investor is supposed to work in "for the investor." Uberwurx tells the investor that the van is not operational because the investor has failed to provide one document after another. The investor gets strung along with excuse after excuse. Uberwurx, however, is already using the investor's van in the territory its supposedly assigned to the investor. Uberwurx bills the LLC's customers as the investors LLC, but requesting payment be made out to the

assumed name, "RhinoPro Mobile," the same tradename Uberwurx uses. This allows Uberwurx to deposit the funds for the LLC into Uberwurx's bank account also under the name, "RhinoPro Mobile," Uberwurx then withdraws the funds to "pay" the LLC, except the owner of the LLC has no idea the LLC is conducting business transactions and never receives a dime of the money.   Neither the Licensee or the IRS has any idea that the income has been generated as the income is quickly laundered through the licensee's shell entity. The whole time the owner of the shell entity doesn't know it owns a shell entity. And the shell entity believes the business is simply at a standstill until the investor complies with some document request, all in violation of Title 18 U.S.C. § 1957.

68. Plaintiff van for example, should only have 170 miles on the odometer, as Uberwurx only had permission to purchase the vehicle in Austin, Texas, then drive the vehicle to Katy, Texas. In 2016, Plaintiff discovered that the vehicle had more than 20,000 miles and a physical damage from a motor accident. Plaintiff also discovered that the vehicle owed for storage in Tennessee, and had an insurance policy in Missouri, all indications that Plaintiff's van was operating for Uberwurx.

## THE FRAUDULENT SCHEME V

69. The Count III Defendants induced Plaintiff into a Licensing Agreement the Plaintiff couldn't read. After Defendants secured Plaintiff's money, Defendants then fabricated a series of documents and mailed them to the Plaintiff to assert a debt that Plaintiff doesn't owe.

70. According to Plaintiff's Licensing Agreement with Defendant Uberwurx:

> 13 .6 Licensee Payment of Monies Due: Licensee shall promptly pay all sums owing to UBERWURX **and its affiliates**. In the event of termination for any default of Licensee, such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by UBERWURX or such affiliates as a result of the default, which obligation shall give rise to and remain, until paid in full, **a lien in favor of UBERWURX against any and all of the personal property, Van, equipment, signs, and inventory owned by Licensee** and on and

used in connection with the UBERWURX Licensed Operation at the time of default.

71. First Defendants had Plaintiff purchase a van, equipment, and inventory that the Count II Defendants stole to generate income for Uberwurx. The Count III Defendants then fabricated invoices to legally transfer the vehicle and any other assets the Plaintiff owned into Uberwurx's name. Martinez only sent the fabricated billing statement and fabricated invoices to maintain an interest in and control over Plaintiff's enterprise through racketeering, including acts violating Title 18 U.S.C. § 1341, Title 18 U.S.C. § 1951, and Title 18 U.S.C. § 1956.

72. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

## 1962 (b) CONTROL INJURY

73. On May 15, 2015, Plaintiff made a mistake in signing a contract the Plaintiff didn't read. Plaintiff then made a mistake on June 12, 2015, in signing the contract again, having received a Spanish explanation of the terms by attorney Carlos Rosas. On the day Plaintiff decided to sue for breach of contract, Plaintiff again made the mistake of having the terms of the contract explained to Plaintiff to decide on how to approach the case. In other words, Plaintiff has never had the contracts translated into Spanish to read. This isn't unusual, in the more than thirty years Plaintiff has been in business, Plaintiff has never once had a contract translated from one language to another. Plaintiff hires attorneys that read the document and explain it before Plaintiff signs it.

74. Plaintiff sued Uberwurx, LLC, and MCM, LLC, and Juan Carlos Martinez for breach of contract. As part of a fraudulent scheme, Martinez filed a frivolous counter suit, falsely alleging Plaintiff owed Defendants money for breach of contract, and defamation. The case was assigned to arbitration. The case has been ongoing for 2 years.

75. On or about November 3, 2018, Plaintiff received a Spanish translation of a suit on verified account that Uberwurx filed against a business called Indiana Jacket LLC. As part of the suit, which is a matter of public record, Uberwurx included a copy of the licensing agreement between Indiana Jacket and Uberwurx. Plaintiff read the petition and Indiana Jacket's verified response. The licensing agreement between Uberwurx and Indiana Jacket is simple and seven pages long, The licensing agreement includes three exhibits, Exhibit A- Products, defining the products the licensee is purchasing from Uberwurx, Exhibit B- Defined Territory, defining the territory the licensor is assigning to the licensee, and Exhibit C- defining the minimum volumes the licensee agrees to purchase over the duration of the licensing agreement.

76. Plaintiff then had the Licensing Agreement between Uberwurx and Plaintiff translated into Spanish and discovered that the Licensing Agreement is missing an exhibit, specifically Annex B, the document that defines the minimum volumes that Plaintiff is required to purchase from Uberwurx during the duration of the Licensing Agreement.

77. Plaintiff has reviewed every document in its possession and reviewed every document the Defendants have produced in discovery. Annex B doesn't exist. Defendants know that the Licensing Agreement is incomplete and have maintained a baseless lawsuit with the hope of getting a judgement enforcing Licensing Agreement. Defendants can then produce "Annex B" after the Plaintiff is barred from disputing the legality of the contract. If Plaintiff simply went to the arbitrator with the finding, Uberwurx would just fabricate Annex B, as it has done since the beginning of the proceedings. Plaintiff has spent more than one hundred and thirty thousand dollars in legal fees, travel to and from Mexico, arbitration fees and translations to defend against a frivolous lawsuit, to break free of the Count IV Defendants control of Plaintiff's enterprise. Plaintiff has suffered the damages by

reason of Defendant's maintenance of the interest in, or control over Plaintiff's enterprise in violation of § 1962 (b).

## CONTINUITY

78. Plaintiff has discovered that the fraudulent schemes described above are not limited to the Plaintiff. Plaintiff has found multiple versions of the PowerPoint presentations Defendants used to induce the Plaintiff into the contracts. Defendants are refining the fraud.

## COUNT IV: VIOLATION OF THE SHERMAN ACT

79. The allegations of paragraphs 1 through 78 are incorporated herein by reference.

80. This claim is against Defendant Uberwurx, LLC.

81. Defendant Uberwurx's actions violate antitrust laws, specifically the Sherman Act. Defendant intentionally enter into the fraudulent Licensing contracts to ensure Defendants can undercut their competitors and control the price for spray-on bed liners. Defendant Uberwurx is attempting to get a judgement using a contract that would prevent the Plaintiff from competing in Missouri, where Uberwurx holds a monopoly on mobile spray-on bed liner services, specifically using Uberwurx's proprietary system. Defendant alone gets to set the price for the services in Missouri. A literal reading of the Licensing Agreement demonstrates the same. If Defendant is successful in having the invalid licensing agreement legitimized by a judgment, Plaintiff's business will not be able to conduct business anywhere including Missouri, even though Plaintiff paid for that right. Defendant is engaging in unilateral conduct that monopolizes or attempts to monopolize the relevant market. Defendants frivolous counterclaim is also a violation of the Antitrust laws.

## COUNT V: CONSPIRACY TO VIOLATE THE SHERMAN ACT

82. The allegations of paragraphs 1 through 81 are incorporated herein by reference.

83. This claim is against Defendant Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant William Hendricks, Defendant Leslie Mitchell, Defendant Karina Gonzalez each entered into a conspiracy to violate the Sherman Act.

### COUNT VI: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

84. The allegations of paragraphs 1 through 83 are incorporated herein by reference.

85. This claim is against Defendant Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant William Hendricks, Defendant Leslie Mitchell, Defendant Karina Gonzalez each entered into a conspiracy to violate Plaintiff's Civil Rights. The Defendants entered into a conspiracy to target foreign nationals based on their nationality, in violation of the Civil Rights Act.

86. Additionally, this claim is against Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant Karina Gonzalez, Defendant Bill Hendricks, and Defendant Leslie Mitchell.

87. Defendants in the State of Texas conspired for the purpose of depriving, either directly or indirectly, Plaintiff's equal protection of the laws, or equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of the State of Texas from giving or securing to all persons with the State of Texas the equal protection of the laws. Defendants conspired to obtain Plaintiff's signature on contracts that waived his rights without Plaintiff's knowledge so that Defendants could continue to defraud foreign investors with impunity. Defendants use different contracts depending on the national origin of the investor.

### CLAIMS IN THE ALTERNATIVE AND OR IN ADDITION

## BREACH OF FIDUCIARY DUTY

88. The allegations of paragraphs 1 through 87 are incorporated herein by reference.

89. On April 28, 2015, Plaintiff entered into an attorney-client contract with Attorney Carlos Rosas. Rosas had a duty to inform Plaintiff that Rosas was participating in a fraudulent scheme with Defendant Juan Carlos Martinez. Carlos Rosas breached his fiduciary duty by failing to disclose the fraudulent scheme. Carlos Rosas benefited from the breach and continues to benefit from the breach. As a result of Carlos Rosas breach Plaintiff suffered damages.

## CONSPIRACY TO VIOLATE FIDUCIARY DUTY

90. The allegations of paragraphs 1 through 87 are incorporated herein by reference.

91. Defendants Juan Carlos Martinez, Defendant Carlos Rosas, Defendant William Hendricks, Defendant Leslie Mitchell, Defendant Karina Gonzalez entered into a conspiracy to breach the fiduciary relationship between Plaintiff Alvarez and Defendant Carlos Rosas. As a result of the conspiracy, Plaintiff suffered damages.

## VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

92. The allegations of paragraphs 1 through 91 are incorporated herein by reference.

93. Defendants engaged in an unconscionable course of conduct, as described herein.

WHEREFORE, Plaintiff Luis Fernando Alvarez demands judgment in a sum in excess of $75,000.00, treble damages or punitive damages as appropriate, actual damages, special damages, costs and attorney fees, and any and all other relief, in law or equity for which it may show itself entitled.

Respectfully Submitted,

Luis Fernando Alvarez



Plaintiff Pro Se

18 Degas Park

The Woodlands, Texas 77382