United States District Court
Southern District of Texas

**ENTERED**

April 29, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS FERNANDO ALVAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4646 |
| | § | |
| CARLOS ROSAS, ALAN SAN MIGUEL, | § | |
| JUAN CARLOS MARTINEZ, WILLIAM | § | |
| HEDRICK, LESLIE MITCHELL, | § | |
| KARINA GONZALEZ, MAGENHEIM | § | |
| & ASSOCIATES, ALAN N. MAGENHEIM, | § | |
| ROSAS & SUERKEN, PLLC, | § | |
| MOBILE COATINGS MANAGEMENT, | § | |
| LLC, and UBERWURX, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] are the following motions: Defendant Alan Ray San Miguel's Motion to Dismiss for Failure to State a Claim (Doc. 24); Defendant Alan N. Magenheim's Motion to Dismiss for Failure to State a Claim (Doc. 34); Defendant Magenheim & Associates' Motion to Dismiss for Failure to State a Claim (Doc. 36); Defendant Magenheim & Associates' Motions to Dismiss for Lack of Subject Matter Jurisdiction (Docs. 37, 38); Defendant William Hedrick's Motion to Dismiss for Failure to State a Claim (Doc. 39); Defendants Uberwurx, LLC, Mobile Coatings Management, LLC, and Juan Carlos Martinez's Motion to Dismiss for Failure to State a Claim (Doc. 40); Defendant Leslie Mitchell's Motion to Dismiss for

---

[1]    The parties consented to proceed before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). <u>See</u> Docs. 20, 26, 62, 64, 69, 70, 71.

Failure to State a Claim (Doc. 44); Plaintiff's Motion to Vacate Arbitration Award for Fraud, Corruption and Undue Means, and Motion to Vacate Judgment for Fraud on the Court (Doc. 47); and Defendants Carlos Rosas, Karina Gonzalez, and Rosas & Suerken, PLLC's Motion to Dismiss for Failure to State a Claim (Doc. 68).

For the reasons stated below, the motions to dismiss are **GRANTED**.  Plaintiff's motion to vacate arbitration award is **DENIED**.

## I. Case Background

### A.  Factual Background[2]

Plaintiff, a citizen of Mexico, brings this suit under the Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1961, et seq., the Sherman Act, and other state law causes of action.[3]  Plaintiff alleges that he and his wife were defrauded in connection with their efforts to secure E-2 visas from the U.S. Citizenship and Immigration Services ("USCIS").[4]

In April 2015, Defendant Juan Carlos Martinez ("Martinez"), president of Uberwurx, LLC ("Uberwurx"), emailed a PowerPoint presentation to Plaintiff in Mexico wherein it was pitched that for $150,000, Plaintiff could purchase from Uberwurx a license to

---

[2]     The court takes its facts from those found in Plaintiff's First Amended Complaint (Doc. 6).

[3]     See Doc. 6, Pl.'s Am. Compl. p. 2. The court assumes that Plaintiff brings suit under Section 1 of the Sherman Act, 15 U.S.C. § 1.

[4]     See Doc. 6, Pl.'s Am. Compl. p. 4.  Generally speaking, an E-2 visa allows a non-immigrant individual to reside in the United States for a limited period of time based on an investment he has made.  See 8 U.S.C. § 1101(a)(15)(E)(ii).

utilize a process for spray-on truck bed liners in the United States, marketed as RhinoPro Mobile.[5]   Defendant William Hedrick ("Hedrick"), the chief executive officer of Uberwurx, sent a sample license agreement to Plaintiff.[6]  With the assistance of Uberwurx, Plaintiff formed a company, Falaso, LLC, ("Falaso"), and transferred $150,000 as a license fee to Uberwurx after signing the license agreeement.[7]  Plaintiff also signed a management and administrative services contract with Mobile Coatings Management LLC ("MCM"), a company affiliated with Martinez.[8]  Plaintiff states that Martinez instructed Plaintiff to add Leslie Mitchell, the chief operating officer of Uberwurx, to Falaso's "charter" and, by that means, Plaintiff alleges that MCM or Uberwurx was able to enter into contracts on Falaso's behalf.[9]  Falaso then entered into a sublease with Uberwurx for office space.[10]  Plaintiff alleges that Uberwurx used Falaso to obtain permits and other documents necessary do to business in other states that allowed Urberwurx to travel across state lines.[11]  Plaintiff also complains that Mitchell used her position on Falaso's corporate charter to purchase a van in Falaso's

---

[5]    See Doc. 6, Pl.'s Am. Compl. pp. 4-6.

[6]    See id. p. 5.

[7]    See id.

[8]    See id. p. 7.

[9]    See id.

[10]   See id. pp. 8-9.

[11]   See id. p. 16.

name.[12]  Plaintiff states that Martinez and others stole the van and its inventory from Falaso and drove the van to Missouri, where they wrecked the vehicle.[13]

As part of the visa-application process, Hedrick wrote a business plan for Falaso that estimated its revenue and revenue growth over a five-year period and represented to the USCIS in that business plan that Falaso would support two full-time jobs, excluding the investor.[14]  Plaintiff complains that this representation was false, that Uberwurx failed to hire any employees for Falaso, and that Falaso did not generate any jobs over a three-year period.[15]  Plaintiff states that Uberwurx does not own the trademarks it purported to license and that the trademarks are owned by Rhino Linings Corporation.[16]

Plaintiff was represented by attorneys Carlos Rosas ("Rosas"), Karina Gonzalez ("Gonzalez") and the law firm Rosas & Suerken during the visa application process.[17]  Plaintiff complains that Rosas knew Plaintiff was unable to read the contracts in English and concealed from Plaintiff several material clauses in the contracts that waived consequential and punitive damages, reduced the applicable statute

---

[12]    See id. p. 16.

[13]    See id. pp. 16, 17.

[14]    See id. 9.

[15]    See id. pp. 9, 16.

[16]    See id.  p. 6.

[17]    See id. p. 10.

of limitations, provided for arbitration and contained a merger provision.[18]   Plaintiff states that he was unaware that Rosas and Gonzalez were agents of Uberwurx.[19]

After Plaintiff paid the $150,000 to Uberwurx, Martinez instructed Plaintiff to deposit an additional $15,000 into the Falaso business "operating" bank account as required by the business plan submitted to the USCIS.[20]   Hedrick told Plaintiff that without this deposit, Falaso's RhinoPro business would not be permitted to operate and Hedrick could not hire employees for the business, thus jeopardizing Plaintiff's visa application.[21]   Plaintiff balked at making the deposit, fearing that if he did, Uberwurx would drain the bank account and demand additional funds because Martinez was pressuring Plaintiff to add Mitchell as a signatory on Falaso's bank account.[22]

In May 2016, Plaintiff asked Martinez for the return of his money.[23]   Uberwurx responded by canceling the administrative and handling contract, demanding arrears for services in the amount of $40,000 and reminding Plaintiff that his visa was contingent on the

---

[18]   See id. p. 10.

[19]   See id. Plaintiff also complains that Falaso and another company, JP Investment Holdings, were assigned the same "exclusive" territory as further evidence that the transaction was fraudulent.   See id. p. 11.

[20]   See id. p. 12.

[21]   See id. p. 13.

[22]   See id. pp. 14-15.

[23]   See id. p. 15.

irrevocable risk capital required by the E-2 visa, along with the generation of employment.[24]

In June 2015, Plaintiff's attorney, Rosas, informed Plaintiff that he needed proof of a commercial sublease for the E-2 visa application.  Plaintiff signed the lease sent to him by Hedrick.[25] According to the complaint, Martinez hired Defendant Magenheim to assist Martinez in the fraudulent visa-procurement scheme by advising Martinez to create fake invoices for services and past-due rent.[26]  Defendant Alan Ray San Miguel ("San Miguel"), another of Plaintiff's attorneys, received demand letters from Magenheim for past-due amounts allegedly owed by Plaintiff and Falaso.[27]

**B.  Procedural Background**

Plaintiff brought suit against Uberwurx and MCM on July 11, 2016, in Texas state court.[28]  The state court granted an order compelling the parties to arbitration on January 13, 2017.[29]  On February 22, 2019, an arbitrator rendered an award in favor of Martinez, Uberwurx and MCM against Plaintiff.[30] MCM was awarded $32,000 for Falaso's breach of the management and administrative

---

[24]    See id. p. 15-16, 18.

[25]    See id. p. 19.

[26]    See id. pp. 21-22.

[27]    See id. p. 22

[28]    See Doc. 34, Def.'s Mot. to Dismiss p. 2.

[29]    See id.

[30]    See Doc. 47, Pl.'s Mot. to Vacate Arbitration Award p. 2.

services contract.[31]  Uberwurx was awarded $6,400 in past due rent, and both Uberwurx and MCM were awarded $83,746.75 in attorney's fees.[32]  The arbitrator denied Falaso's affirmative claims in their entirety.[33]

On December 10, 2018, Plaintiff filed the present suit charging that all Defendants engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(b), (c) and (d), by committing the predicate offenses of mail, wire and bank fraud in violation of 18 U.S.C. §§ 1341, 1343, 1344, interstate transportation of stolen vehicles and goods in violation of 18 U.S.C. §§ 2312, 2314, the Hobbs Act, 18 U.S.C. § 1951, and the Immigration and Nationality Act, 8 U.S.C. § 1324a.[34] Plaintiff also alleged fraud in the inducement, a conspiracy to interfere with civil rights, a conspiracy to violate the Sherman Act, a breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices Act.[35]  Plaintiff amended his complaint on February 6, 2019, adding a fraud on the court claim.[36]  Defendants have filed the pending motions to dismiss.  In response, Plaintiff seeks leave to amend his complaint once again.

---

[31]   See Doc. 39-1, Ex. 1 to Def. Hedrick's Mot. to Dismiss, Arbitration Award p. 3.

[32]   See id.

[33]   See id.

[34]   See Doc. 1, Pl.'s Compl.

[35]   See id. pp. 18-30.

[36]   See Doc. 6, Pl.'s 1st Am. Compl. pp. 25-26.

## II.  Dismissal Standard

Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). A district court's jurisdiction is limited to actual cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement . . . ." Id. at 560; see also McCall v. Dretke, 390 F.3d 358, 361 (5th Cir. 2004)(explaining that standing is an essential component of federal subject matter jurisdiction).

Rule 12(b)(6) allows dismissal of an action whenever the complaint, on its face, fails to state a claim upon which relief can be granted.  The court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 803 n.44 (5th Cir. 2011)(quoting True v. Robles, 571 F.3d 412, 417 (5th Cir. 2009)).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." <u>Iqbal</u>, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. 678.

### III.  Analysis

All Defendants attack Plaintiff's RICO claims as inadequately pleaded for a variety of reasons.  In addition, Defendant San Miguel challenges the factual sufficiency of Plaintiff's breach of fiduciary duty claim;[37] Defendant Magenheim and his law firm claim immunity from suit;[38] Defendant Hedrick argues that Plaintiff failed to adequately plead reliance in connection with his fraud claim;[39] Defendant Mitchell states that Plaintiff's claims were resolved in arbitration;[40] and Defendant Gonzalez argues that Plaintiff failed to adequately allege claims for violation of the Sherman Act, abuse of process, breach of fiduciary duty and DTPA.[41]  Defendants Magenheim and Magenheim & Associates further argue that Plaintiff lacks standing to challenge the arbitration and the other acts

---

[37]    <u>See</u> Doc. 24, Def. San Miguel's Mot. to Dismiss pp. 10-13.

[38]    <u>See</u> Doc. 34, Def. Magenheim's Mot. to Dismiss pp. 4-5; Doc. 36, Def. Magenheim & Assocs.' Mot. to Dismiss pp. 4-5.

[39]    <u>See</u> Doc. 40, Def. Hedrick's Mot. to Dismiss pp. 8-9.

[40]    <u>See</u> Doc. 44, Def. Mitchell's Mot. to Dismiss pp. 3-4.

[41]    <u>See</u> Doc. 68, Defs. Rosas, Gonzalez & Rosas & Suerken's Mot. to Dismiss pp. 13-15.

alleged in the complaint because it was Falaso and not Plaintiff that suffered the alleged harm.[42]

## A.  <u>Subject Matter Jurisdiction</u>

The court first examines its subject matter jurisdiction.  In order to establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a likelihood that the injury can be redressed by a favorable decision. <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014)(quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)).

The concern voiced by Magenheim and Magenheim & Associates is whether Plaintiff has standing to bring this lawsuit when the contracts were signed by Falaso, and the alleged "stolen property," the $150,000, was paid to Uberwurx by Falaso.  On the other hand, Plaintiff has alleged an injury personal to himself based on being fraudulently induced to pay $150,000 for the creation of Falaso, a key element in the scheme to obtain E-2 visas.  Broadly read, this is a damage personal to Plaintiff.

While the court harbors concerns whether the factual allegations reflect that he is the real party in interest for *all* claims alleged, the court finds that these problems do not deny the court of subject matter jurisdiction to consider the pending

---

[42]    <u>See</u> Doc. 37, Def. Magenheim & Assocs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction; Doc. 38, Def. Magenheim's Mot. to Dismiss for Lack of Subject Matter Jurisdiction.

motions.  See Rideau v. Keller Indep. Sch. Dist., 819 F.3d 155, 163 n.7 (5th Cir. 2016)(citing William v. Dorsaneo, III, The Enigma of Standing Doctrine in Texas Courts, 28 Rev. Litig. 35, 65 (2008))(noting that constitutional standing differs from capacity to sue in that the former raises a question of subject matter jurisdiction while the latter does not).  The concerns of legal capacity and real party in interest may be addressed under Federal Rule of Civil Procedure 12(b)(6) if Plaintiff can state a claim for relief under either RICO or the Sherman Act, the statutory bases for the court's federal question jurisdiction.  The court turns to consider whether Plaintiff has adequately invoked a federal cause of action.

**B. RICO Causes of Action**

Congress enacted RICO in order to prohibit conduct involving a pattern of racketeering activity.  See Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006); Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996).  "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of the RICO's substantive restrictions." Anza, 547 U.S. at 453 (quoting 18 U.S.C. § 1964(c)).

In order to state a claim under RICO, a plaintiff must establish that a person has engaged in (1) a pattern of racketeering activity that is (2) connected to an "enterprise." Abraham v. Singh,

480 F.3d 351, 355 (5th Cir. 2007).  The substantive requirements of Section 1962 are the same regardless of whether the suit is civil or criminal.  St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 446 n.15 (5th Cir. 2000).

"Racketeering activity," which is commonly referred to as a "predicate act," is defined to include mail, wire and bank fraud, interstate transportation of stolen property and motor vehicles, any act indictable under the Immigration and Nationality Act and the Hobbs Act.  See 18 U.S.C. § 1961 (defining "racketeering activity"); Waste Mgmt. of La., L.L.C. v. River Birch, Inc., 920 F.3d 958, 964 (5th Cir. 2019)(referring to racketeering activity as a "predicate act").  In order to rise to the level of "racketeering activity" there must be "two or more predicate criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'"  Abraham, 480 F.3d at 355 quoting Word of Faith World Outreach Ctr. Church, 90 F.3d at 122 .

Plaintiff's RICO claims are based on alleged predicate acts of mail and/or wire and/or bank fraud, interstate transportation of stolen property, immigration fraud and violation of the Hobbs Act. Federal Rule of Civil Procedure ("Rule") 9(b) governs Plaintiff's allegations of fraud and therefore the alleged RICO predicate acts that sound in fraud must be pleaded with particularity.  See Walsh v. America's Tele-Network Corp., 195 F.Supp. 2d 840, 846 (E.D. Tex. 2002) (citing Williams v. WMX Techs. Inc., 112 F.3d 175, 177 (5th

Cir. 1997).  Plaintiff's fraud allegations must refer to the "time place, and contents of the false representations, as well as the identity of the person making the representation and what the person obtained thereby." <u>Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134, 1139 (5th Cir. 1992); <u>Skidmore Energy, Inc. v. KPMG LLP</u>, Civ. No.A3:03cv2138-B, 2004 WL 3019097, at *3 (N.D. Tex. Dec. 28, 2004).  Therefore, Plaintiff's claim of wire, mail and bank fraud must be supported with the content of the alleged fraudulent communication and how those communications furthered the scheme to defraud.  <u>See</u> <u>Elliott v. Foufas</u>, 867 F.2d 877, 882 (5th Cir. 1989).

The court has reviewed Plaintiff's amended complaint and finds that it largely relies on conclusory allegations that sweep in all Defendants.  Although Plaintiff attributes several alleged fraudulent statements directly to Martinez, Plaintiff fails to state when those statements were made and fails to explain how those statements were false when made.  For example, Plaintiff complains that Martinez fraudulently told him that Mitchell had to be added to the Falaso charter in order for MCM to manage Falaso.[43]  The amended complaint attached a signed contract between Falaso and MCM wherein Falaso contracted with MCM to act as Falaso's manager.[44] The agreement, signed by Plaintiff, authorized MCM to pay accounts, operate Falaso's bank accounts and generally to run Falaso's

---

[43]    <u>See</u> Doc. 6, Pl.'s Am. Compl. p. 14.

[44]    <u>See</u> Doc. 6-1, Ex. C to 1st Am. Compl., Mgmt. & Admin. Servs. Agreement, pp. 61-72.

business.[45]  Therefore, it was never contemplated that Falaso would manage its own business operations or contract for itself, making Martinez's allegedly fraudulent representation that Mitchell was required to be on Falaso's charter not false or immaterial.

Plaintiff also alleges that Uberwurx failed to hire employees for Falaso and did not disclose this failure to Plaintiff.[46]  But Plaintiff also alleges that Uberwurx asked for a $15,000 deposit into Falaso's bank account as working capital and explained that it needed the money to hire personnel and move the van into production.[47]  Plaintiff refused to make that deposit, and Uberwurx refused to operate the business until the deposit was made.[48]  While the amended complaint sets forth a lengthy chronicle of unmet expectations and failed performances on both sides, the allegations are insufficient to support a mail or wire fraud claim.  For similar reasons, the interstate transportation of stolen property claim is not supported by facts that would show a vehicle titled in Plaintiff's name[49] was stolen and moved in interstate commerce given Plaintiff's averments that Plaintiff refused to pay Uberwurx for the day-to-day operation of Falaso.

---

[45]     See id. pp. 64-65.

[46]     See Doc. 6, Pl.'s Am. Compl. pp. 9, 16-17.

[47]     See id. p. 13.

[48]     See id. p. 14.

[49]     It appears from the complaint that the van was to be owned by Falaso, not Plaintiff.  Because the allegation fails to state a claim, the court need not reach whether Plaintiff has the capacity to sue on this claim.

Also, the court does not find any factual support for the claims of interference with commerce by robbery, bank fraud and hiring an unauthorized alien.  The court concludes that Plaintiff has failed to adequately plead a predicate act that was involved in a RICO conspiracy.

Plaintiff also fails to adequately allege a continuing criminal enterprise.  In order to state a claim under RICO, a plaintiff must show "either  . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition."  H.J. Inc., v. Nw. Bell Tel. Co., 492 U.S. 229, 240-41 (1989).

The Fifth Circuit has explained:

> To establish continuity, plaintiffs must prove . . . either a closed period of repeated conduct, or an open-ended period of conduct that "by its nature projects into the future with a threat of repetition."  A closed period of conduct may be demonstrated by "proving a series of related predicates extending over a substantial period of time."  An open period of conduct involves the establishment of "a threat of continued racketeering activity."  This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business."  The Court has stated that in enacting RICO, Congress was concerned with "long-term criminal conduct."

Word of Faith World Outreach Ctr. Church, Inc., 90 F.3d at 122 (quoting H.J., Inc., 492 U.S. at 239-242)(internal citations omitted).  Where the RICO allegations concern only a single scheme with a single purpose, courts have held that a pattern of

15

racketeering has not been shown.  See Word of Faith World Outreach Ctr. Church, 90 F.3d at 123; Conry v. Daugherty, Civ. Action No. 10-4599, 2011 WL 2473959, at *4 (E.D. La. June 22, 2011)(unpublished).

As the court reads Plaintiff's amended complaint, he alleges one scheme to defraud him of $150,000 which was paid to support an application for E-2 visas.  Plaintiff alleges that he was induced to enter into this scheme to defraud in April-May 2015 and signed the fraudulent documents in May 2015.[50]  Uberwurx attempted to obtain additional funds from Plaintiff/Falaso in November 2015 and in May 2016.[51] By July 2016, Plaintiff notified Martinez of his intention to sue.[52]  The allegations concern one scheme and one victim and are inadequate to allege a pattern of racketeering.  See Word of Faith World Outreach Ctr. Church, 90 F.3d at 123.  The court concludes that Plaintiff has failed to allege a continuing criminal enterprise.  Plaintiff's claim of a RICO conspiracy must be dismissed.

## C.  **Sherman Act**

Plaintiff also alleges that Defendants violated the Sherman Act but fails to state the particular section of the Sherman Act that underpins this claim.  The Sherman Act generally prohibits contracts or conspiracies that act in restraint of trade or attempt

---

[50]   See Doc. 6, Pl.'s Am. Compl. pp. 5-7.

[51]   See id. pp. 12-15.

[52]   See id. pp. 22-23.

16

to monopolize trade or commerce.  See 15 U.S.C. §§ 1, 2.  The court
finds that Plaintiff has failed to allege a claim under either
Section 1 or 2 of the Sherman Act.

**D.  <u>Motion to Vacate Arbitration Order</u>**

Plaintiff has filed a motion to vacate the arbitration award
entered against Falaso and, as grounds, asserts that Falaso's
attorney, opposing counsel and the arbitrator acted to defraud
Falaso as evidenced by the adverse award.  Plaintiff asserts that
this court has jurisdiction under the Federal Arbitration Act to
consider this motion because the case in arbitration involved
interstate commerce and also related to a vehicular accident that
occurred in either Missouri or Tennessee.[53]

Plaintiff lacks the constitutional standing to bring this claim
because he has not suffered an injury in fact.  See Susan B. Anthony
List v. Driehaus, 573 U.S. at 158.  The arbitrating parties were
Falaso, LLC, Uberwurz, LLC, MCM, LLC, Rhino Pro CS and Martinez.[54]
Plaintiff was not a party to the challenged contracts and the entity
that was alleged to have sustained "an injury in fact," by the
arbitrator's adverse award was Falaso, not Plaintiff.  As Plaintiff
was a stranger to the contract compelling arbitration, he lacks
standing to bring this claim.  Plaintiff's motion to vacate the
arbitrator's award must be dismissed for failure to state a claim

---

[53]    See Doc. 47, Pl.'s Mot. to Vacate Arb. Award p. 5.

[54]    See Doc. 39-1, Final Award of Arbitrator pp. 1-2.

upon which relief can be granted.

**E.  State Law Claims**

The court has determined that Plaintiff has failed to state a claim under those statutes that provided it with original jurisdiction.  Although those claims are no longer part of this lawsuit, they could provide the basis for exercising supplemental jurisdiction over the remaining state law claims against the defendants.  See 28 U.S.C. § 1367(a).  The court in its discretion may decline to exercise that jurisdiction after dismissal of all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988)(stating that, when a district court dismisses the sole federal claim early in litigation, it has a compelling reason not to continue to exercise jurisdiction over the remainder of the case).

The Fifth Circuit has counseled that in determining whether to exercise supplemental jurisdiction under Section 1367(c), a court must consider the statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity. Brookshire Bros. Holding, Inc. v. Dayco Products, Inc., 554 F.3d 595, 601-02 (5th Cir. 2009).  Here, the federal claims have been dismissed at the pleading stage, no discovery has been commenced and there is no compelling reason why this court should continue to exercise supplemental jurisdiction over purely state law claims. The state law claims are dismissed without prejudice to refiling in

state court within the time constraints of 28 U.S.C. § 1367(d).

**F.   Plaintiff's Motion for Leave to Amend**

In Plaintiff's response to the motions to dismiss, Plaintiff alternatively posits that if the court is inclined to dismiss his claims, that he be allowed to file a Second Amended Complaint, which was attached thereto.   In the proposed Second Amended Complaint, Plaintiff seeks to add his wife and Falaso as plaintiffs and only pursue a legal malpractice and breach of contract claim against his former attorneys, Roses, Gonzalez and Rosas & Suerken.

For the reasons stated above, the court declines to allow amendment to pursue state law claims in the absence of original federal jurisdiction.   Plaintiff's alternative request to amend the pleadings is **DENIED.**

## IV.   Conclusion

For the reasons discussed above, this action is **DISMISSED** for failure to state a claim upon which relief can be granted.

**SIGNED** in Houston, Texas, this 29th day of April, 2020.

_____
Nancy K. Johnson
United States Magistrate Judge

19